IN THE MATTER OF THE APPLICATION OF RICHARD P. TERHUNE FOR LEAVE TO FILE AN INFORMATION IN THE NATURE OF A WRIT OF QUO WARRANTO IN THE NAME OF THE ATTORNEY-GENERAL v. FREDERICK A. POTTS, SIMON BORG, CHARLES MINZESHEIMER, HENRY MARK, ROBERT K. DOW, CHARLES SIEDLER, GARRET A. HOBART, HENRY SANDFORD, ALBERT SULLY, STEPHEN B. WHITE, JOHN I. BLAIR, HORATIO S. PIERCE AND AARON PECK, CLAIMING TO EXERCISE A FRANCHISE UNDER THE NAME OF THE NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY.

A *de facto* consolidation of two railroad companies having been effected by the filing of a certificate in the secretary of state's office, pursuant to the statute, (*Pamph. L.* 1881, *p.* 222,) and an organization of a new company thereunder having been made, and considerable money expended in the construction of the railroads included in the consolidation—*Held*, that the holder of income-bonds of one of the companies could not have an information. in the nature of a *quo warranto* to determine the validity of the consolidation.

On application for leave to file an information in the nature of a *quo warranto* against certain persons claiming to exercise the franchise of a railroad corporation under the name of the New York, Susquehanna and Western Railroad Company.

Argued at February Term, 1885, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the applicant, *John Linn*.

*Contra, John W. Taylor.*

The opinion of the court was delivered by

DEPUE, J.   This proceeding was instituted for the purpose of testing the validity of the organization of the New York, Susquehanna and Western Railroad Company, of which the individuals against whom this writ is sought are directors.

The New Jersey Midland Railroad Company was formed by the consolidation of several railroad companies incorporated by special charters. This consolidation was effected by a special act of the legislature, approved March 17th, 1870. *Pamph. L., p.* 811. The property and franchises of this corporation were sold under foreclosure in 1880, and purchased by a committee representing the first mortgage bondholders, in behalf of such bondholders and such other creditors and the stockholders who had united or might unite in a proposed plan of re-organization.

The re-organization was afterwards effected under a plan of re-organization, dated October 21st, 1875, and a supplemental plan of the date of April 3d, 1880. A certificate of the re-organization was made under the corporate name of "The Midland Railroad Company of New Jersey," and the new company entered upon a corporate existence under the re-organization, and proceeded to exercise the franchises derived from such re-organization. The regularity and validity of these proceedings are not questioned.

Terhune, the applicant for this writ, was the holder of third mortgage bonds and of certain shares of the capital stock of the original company. He complied with the terms and conditions of the plans of re-organization, surrendered his bonds and stock, paid the assessments thereon, and received the obligations of the new company provided for in the plans of re-organization.

Subsequent to the consummation of the re-organization, the directors of the new company entered into articles of agreement with the directors of the Paterson Extension Railroad Company, the Midland Connecting Railroad Company, the North Jersey Railroad Company, the Water Gap Railroad Company and the Pennsylvania Midland Railway Company, for the consolidation of the capital stock, franchises and property of these several corporations into one company under the name of "The New York, Susquehanna and Western Railroad Company." This consolidation was proposed to be made pursuant to the act of the legislature of this state entitled "An act

to authorize railroad companies incorporated under the laws of this and adjoining states to merge and consolidate their corporate franchises and other property," approved March 25th, 1881. *Pamph. L., p.* 222.

To carry into effect the aforesaid agreement for consolidation, a meeting of the stockholders of the Midland Railroad Company of New Jersey was convened on the 10th of June, 1881, for the submission of the articles of agreement for the proposed consolidation to the stockholders of that company, for adoption or rejection, in compliance with the requirements of the second section of the act of 1881. At this meeting the consolidation was approved by two-thirds of the votes of all the stockholders, as required by the statute. Among the votes given for the consolidation were those cast on fifty-six hundred shares of stock issued to the New York and Scranton Construction Company, and without which the number of votes required by the statute was not obtained.

Terhune attended the meeting and voted against the consolidation, and also protested against receiving the votes upon the stock issued to the construction company.

In pursuance of the vote at this meeting, a certificate of the adoption of the agreement to consolidate was duly made, and the agreement so adopted was filed in the office of the secretary of state on the 17th of June, 1881, in compliance with the statute. A consolidation *de facto* was effected. The new company was *de facto* organized. Directors and officers were elected, and under the organization the company has been operating the railroads comprised in the scheme of consolidation, and has expended considerable money in completing the construction and extension of the railroads included in the consolidation.

Terhune is no longer the holder of any of the capital stock of the Midland company. His only *status* is as the holder of income-bonds of that company, which he received upon the reconstruction under the plans of re-organization of 1875 and 1880. His ground of complaint is that the consolidation impairs the value of the securities he holds against the Midland

Terhune v. Potts.

Company, and that the fifty-six hundred shares of the stock of that company issued to the construction company—by the voting of which the consolidation was effected—were issued in violation of the plans of re-organization, on the faith of which he consented to the re-organization, accepted the junior securities of the company, and paid the assessments thereon.

He now applies for leave to file an information in the nature of a *quo warranto* against the directors and officers of the New York, Susquehanna and Western Railroad Company, for the purpose of testing the validity of the act of consolidation by which this company claims to have been organized and to have its legal existence.

It is undeniable that this corporation was organized under the forms of law ; that it acquired existence as a corporation *de facto*, and has been exercising corporate powers ever since the consolidation was effected, and that the applicant is seeking its dissolution by these proceedings as the means of enforcing rights personal to himself. The law is entirely settled that the court may grant leave to file such an information, at the instance of a private relator, against an officer of a corporation for an unlawful intrusion into an office on grounds affecting his individual title, although the same objections apply to the title of every other officer and member of the corporation, and the application is incidentally, in effect, against the whole corporate body. *Rex* v. *White*, 5 *Ad. & E.* 613 ; *State* v. *Tolan*, 4 *Vroom* 195 ; *Field on Corp.*, § 457. But when the proceeding is against certain individuals for claiming to act as a corporation, and its object is to try the legality of the charter and to determine the corporate existence of a corporation, it can be instituted only by the attorney-general as the representative of the state, and in behalf of the state. For that purpose a private relator cannot have the use of this writ. *Rex* v. *Ogden*, 10 *B. & C.* 230 ; *Regina* v. *Taylor*, 11 *Ad. & E.* 949 ; *Regina* v. *Jones*, 8 *L. T. (N. S.)* 503 ; *State* v. *P. & H. Turnpike Co.*, 1 *Zab.* 9 ; *Nat. Docks R. R. Co.* v. *C. R. R. Co.*, 5 *Stew. Eq.* 755–760 ; *Cole on Crim. Inf.* 124.

The rule to show cause is discharged, with costs.